BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
JAMES M. DAVIS (301636)
501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
jdavis@bholaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| IVY KARINA VALES, TINA MARIE BARRALES, CINDY DOERR, ADELINA PEPENELLA, and KIMBERLY CAUDLE, individually and on behalf of all others similarly situated, | Case No.  5:25-cv-01755 |
| | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | |
| v. | |
| ROC OPCO LLC, | |
| Defendant. | **JURY TRIAL DEMANDED** |

00222526

CLASS ACTION COMPLAINT

Plaintiffs Ivy Karina Vales, Tina Marie Barrales, Cindy Doerr, Adelina Pepenella, and Kimberly Caudle, by and through their attorneys, make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge, against RoC Opco LLC ("Defendant" or "RoC").

**NATURE OF THE ACTION**

1.      Retinol is a vitamin A derivative widely used as an ingredient in cosmetic topical skin applications (creams, gels, serums) for its potential anti-aging properties. Retinol as an ingredient in cosmetic skincare is widely understood by the consuming public to have these properties and is purchased by consumers to reduce the appearance of fine lines and wrinkles, fade dark spots on skin, prevent premature aging, and to generally maintain healthy skin. Retinol, however, takes time to work. It must undergo a complex biological conversion to its active form, retinoic acid, in the skin in order to impart these effects. To have any impact, retinol-containing products require long-term, consistent exposure to the skin that is repeated daily. Otherwise, these products confer none of the suggested benefits of retinol. While consumers widely understand the potential benefits associated with retinol, they are largely unaware of the biological processes required to achieve these benefits.

2.      RoC exploits consumers' perception of the benefits of retinol and consumers' lack of knowledge about how retinol works by deceptively advertising and selling a rinse-off "Retinol Correxion Deep Wrinkle Serum Cleanser" (hereafter, the "Retinol Rinse-Off Cleanser") that purports to deliver the commonly understood dermatologic benefits of retinol—but is rinsed off right away, therefore minimizing its contact time with the target organ, in this case the skin. This cleanser is intended to be used like a face wash: applied and then washed off. Washing off retinol within seconds after application means the retinol will not and cannot provide the advertised benefits. Further, retinol is a relatively unstable chemical. It must be properly packaged, shipped, and stored, otherwise it loses its efficacy. RoC does not properly package, ship or store the subject retinol product. As a result, by the time a consumer purchases the subject products, the retinol is no

Case No.

BLOOD HURST & O' REARDON, LLP

00222526

longer active. The Retinol Rinse-Off Cleanser does not provide the skincare benefits associated with topically applied vitamin A.

3.     RoC's advertising claims about the promised benefits of its Retinol Rinse-Off Cleanser are deceptive and misleading. The retinol in the Retinol Rinse-Off Cleanser does not work as advertised and does not provide the advertised benefits.

4.     Plaintiffs seek, among other relief, damages, restitution, and injunctive relief on behalf of themselves and a class defined as:

> All persons within the United States who purchased one or more Retinol Rinse-Off Cleanser from the beginning of the applicable limitations period until the date notice is provided to the Class (the "Nationwide Class" or the "Class").

5.     Alternatively, Plaintiffs bring this action on behalf of themselves and the following classes defined as:

> **Multistate Consumer Protection Class**: All persons who purchased one or more Retinol Rinse-Off Cleanser in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Hampshire, New Jersey, New York, Rhode Island, Texas, Washington, and Wisconsin for personal consumption from the beginning of any applicable limitations period through the date of class certification.

> **New York Subclass**: All persons who purchased one or more Retinol Rinse-Off Cleanser in the State of New York from the beginning of any applicable limitations period until the date notice is provided to the Class.

> **California Subclass**: All persons who purchased one or more Retinol Rinse-Off Cleanser in the State of California from the beginning of any applicable limitations period until the date notice is provided to the Class.

> **Illinois Subclass:** All persons who purchased one or more Retinol Rinse-Off Cleanser in the State of Illinois from the beginning of any applicable limitations period until the date notice is provided to the Class.

> **Missouri Subclass:** All persons who purchased one or more Retinol Rinse-Off Cleanser in the State of Missouri from the beginning of any applicable limitations period until the date notice is provided to the Class.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from Defendant.

7.     This Court has personal jurisdiction over Defendant because Defendant conducts business in California. Defendant has marketed, advertised, distributed, and sold the Retinol Rinse-Off Cleanser in California, rendering exercise of jurisdiction by California courts permissible.

8.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Plaintiff Ivy Karina Vales purchased the subject product in this District and Defendant does business throughout this District.

9.     Pursuant to Civil Local Rule 3-2(c), a substantial part of the events giving rise to the claims brought herein occurred in Santa Clara County, California. Consequently, assignment to the San Jose Division is appropriate.

## PARTIES

10.     Plaintiff Ivy Karina Vales is a resident of the State of California. While residing in San Jose, California, Plaintiff Vales was exposed to and saw the subject advertising message by reading the Retinol Rinse-Off Cleanser labeling and packaging. In reliance on the advertising message that the Retinol Rinse-Off Cleanser contained retinol and would confer the benefits of retinol, Plaintiff Vales purchased the Retinol Rinse-Off Cleanser, paying between approximately $10 and $15 at Target in San Jose, California, in the middle of 2024. By purchasing the deceptively advertised Retinol Rinse-Off Cleanser, Plaintiff Vales suffered injury-in-fact and lost money. The Retinol Rinse-Off Cleanser does not provide the benefits of retinol. Had Plaintiff Vales known the truth about RoC's misrepresentations and omissions at the time of her purchase, Plaintiff Vales would not have purchased the Retinol Rinse-Off Cleanser or would have paid less for it.

11.     Plaintiff Tina Marie Barrales is a resident of the State of California. While residing in Huntington Park, California, Plaintiff Barrales was exposed to and saw the subject advertising message by reading the Retinol Rinse-Off Cleanser labeling and packaging. In reliance on the advertising message that the Retinol Rinse-Off Cleanser contained retinol and would confer the benefits of retinol, Plaintiff Barrales purchased the Retinol Rinse-Off Cleanser for approximately $15 in Huntington Park, California, three times between September 2024 and December 2024 at CVS and Target. By purchasing the deceptively advertised Retinol Rinse-Off Cleanser, Plaintiff Barrales suffered injury-in-fact and lost money. The Retinol Rinse-Off Cleanser does not provide

BLOOD HURST & O' REARDON, LLP

00222526

BLOOD HURST & O' REARDON, LLP

the benefits of retinol. Had Plaintiff Barrales known the truth about RoC's misrepresentations and omissions at the time of her purchases, Plaintiff Barrales would not have purchased the Retinol Rinse-Off Cleanser or would have paid less for them.

12.     Plaintiff Cindy Doerr is a resident of the State of Illinois. While residing in Lawrenceville, Illinois, Plaintiff Doerr was exposed to and saw the subject advertising message by reading the Retinol Rinse-Off Cleanser labeling and packaging. In reliance on the advertising message that the Retinol Rinse-Off Cleanser contained retinol and would confer the benefits of retinol, Plaintiff Doerr purchased the Retinol Rinse-Off Cleanser in the middle of 2024 at Walmart, paying approximately $15. By purchasing the deceptively advertised Retinol Rinse-Off Cleanser, Plaintiff Doerr suffered injury-in-fact and lost money. The Retinol Rinse-Off Cleanser does not provide the advertised benefits of retinol. Had Plaintiff Doerr known the truth about RoC's misrepresentations and omissions at the time of her purchases, Plaintiff Doerr would not have purchased the Retinol Rinse-Off Cleanser or would have paid less for it.

13.     Plaintiff Adelina Pepenella is a resident of the State of New York. While residing in New York, New York, Plaintiff Pepenella was exposed to and saw the subject advertising message by reading the Retinol Rinse-Off Cleanser labeling and packaging. In reliance on the advertising message that the Retinol Rinse-Off Cleanser contained retinol and would confer the benefits of retinol, Plaintiff Pepenella purchased the Retinol Rinse-Off Cleanser in fall 2024, for approximately $10 from Duane Reade or CVS. By purchasing the deceptively advertised Retinol Rinse-Off Cleanser, Plaintiff Pepenella suffered injury-in-fact and lost money. The Retinol Rinse-Off Cleanser does not provide the advertised benefits of retinol. Had Plaintiff Pepenella known the truth about RoC's misrepresentations and omissions at the time of her purchases, Plaintiff Pepenella would not have purchased the Retinol Rinse-Off Cleanser or would have paid less for it.

14.     Plaintiff Kimberly Caudle is a resident of the State of Missouri. While in St. Louis, Missouri, Plaintiff Caudle was exposed to and saw the subject advertising message by reading the Retinol Rinse-Off Cleanser labeling and packaging. In reliance on the advertising message that the Retinol Rinse-Off Cleanser contained retinol and would confer the benefits of retinol, Plaintiff Caudle purchased the Retinol Rinse-Off Cleanser in or around June 2024, for approximately $10

from Ulta. By purchasing the deceptively advertised Retinol Rinse-Off Cleanser, Plaintiff Caudle suffered injury-in-fact and lost money. The Retinol Rinse-Off Cleanser does not provide the advertised benefits of retinol. Had Plaintiff Caudle known the truth about RoC's misrepresentations and omissions at the time of her purchases, Plaintiff Caudle would not have purchased the Retinol Rinse-Off Cleanser or would have paid less for it.

15.    On February 19, 2025, Plaintiffs provided notice and made demand to RoC informing it that the Retinol Rinse-Off Cleanser did not perform as advertised as alleged herein and demanded, among other relief, refunds on behalf of themselves and the Class. A true and correct copy of that correspondence is attached as **Exhibit A.**

16.    Defendant RoC is a Delaware limited liability company with its principal place of business in New York, New York. RoC is owned by two corporations that are incorporated in Delaware with principal places of business in in New York. Thus, by way of its members, RoC is a citizen of New York and Delaware. RoC manufactures, advertises, markets, distributes, and sells the Retinol Rinse-Off Cleanser.

## **FACTUAL ALLEGATIONS**

### *Background on Retinoids, Including Tretinoin and Retinol*

17.    Retinol is a type of retinoid. Retinoids are a class of chemical compounds that are derivatives of vitamin A.

18.    In the human body, retinol is the primary form of vitamin A that circulates in the bloodstream, and retinoic acid is its most biologically active form. The vitamin is stored in the liver as retinyl esters, which can be converted back to retinol and released into the bloodstream when needed.

19.    The synthetic version of biologically active retinoic acid is known as tretinoin and is only available by prescription. Tretinoin binds to and activates specific retinoic acid (RAR) and

BLOOD HURST & O' REARDON, LLP

retinoid-X (RXR) receptors inside skin cells.[1] This process can influence gene expression, protein production, and skin cell development.[2]

20.    The common side effects of tretinoin—such as dryness, peeling, redness, and itching (known as the "retinoid reaction")[3]—underscore its potency and the biological processes required for its activity. Evidence shows that tretinoin influences collagen synthesis, fibroblast activity, and the inhibition of matrix metalloproteinases—enzymes that break down proteins like collagen found in the spaces between cells.[4] Tretinoin is FDA-approved under various brand names[5] for treating facial acne and as an anti-aging treatment, underscoring its powerful effects and specific mechanisms of action.

21.    Retinol derivatives, which are not classified as drugs, are commonly found in over-the-counter ("OTC") "cosmeceutical" products. Skincare companies selling OTC retinol products have long claimed that retinol has antiaging effects and improves skin texture, combats hyperpigmentation, reduces dryness, and lessens or eliminates fine lines in the skin.[6] OTC retinols are commonly sold in creams, gels, lotions, ointments and serums.

22.    Unlike FDA-approved tretinoin, retinols—which are twenty times less potent than tretinoin[7]—require a series of complex enzymatic steps in the body, including oxidation and hydroxylation, to convert into active retinoic acid.[8] This intricate process underscores the biological hurdles involved in achieving any meaningful effect from retinol.

---

[1]    Milosheska, et al., *Use of Retinoids in Topical Antiaging Treatments: A Focused Review of Clinical Evidence for Conventional and Nanoformulations*, Adv Ther. 2022 Dec;39(12):5351-5375.
[2]    *Id.*
[3]    *Id.*
[4]    *Id.*
[5]    Common brand names include Altreno, Atralin, Obagi, Retin-A, Tretin-X, and Ziana.
[6]    *See, e.g.,*   https://www.rocskincare.com/products/retinol-correxion-deep-wrinkle-serum-cleanser?srsltid=AfmBOoqefXty2JlusI6pPk11t-T0j2NfHARn0_8FGCS9pfEfWSHcAHmm (RoC webpage for the Retinol Rinse-Off Cleanser stating: "After just two weeks, 97% of women had an improvement in skin firmness and a visible reduction in fine lines & wrinkles, even deep ones.")
[7]    Kang S, Duell EA, Fisher GJ, et al. *Application of retinol to human skin in vivo induces epidermal hyperplasia and cellular retinoid binding proteins characteristic of retinoic acid but without measurable retinoic acid levels or irritation.* J Invest Dermatol. 1995;105(4):549–556.
[8]    Riahi RR, et al. *Topical retinoids: therapeutic mechanisms in the treatment of photodamaged skin*. Am J Clin Dermatol. 2016;17(3): 265–76.

BLOOD HURST & O' REARDON, LLP

00222526

| retinyl esters | → | retinol | → | retinaldehyde (retinal) | → | retinoic acid |

23.    This conversion process—essential for efficacy—requires time. For topical retinol to work, it must remain on the skin long enough to permeate the stratum corneum (the outermost layer of the skin, often referred to as the "skin barrier") and undergo the conversion process to retinoic acid. Only then can the retinoic acid bind to the RAR and RXR nuclear receptors in the cell nucleus to regulate gene expression and produce its effects. The process takes hours and must be repeated, usually daily, to have any effect. The process does not and cannot work if retinol is applied to the skin and then rinsed off soon after because the retinol does not have sufficient contact with the skin to be absorbed.

24.    RAR and RXR nuclear receptors, which are necessary for retinoic acid to work, are found primarily in keratinocytes—the living skin cells located in the deeper layers of the epidermis. However, the stratum corneum, the outermost layer of skin that body wash contacts, is made up of dead skin cells called corneocytes. Corneocytes lack nuclei and therefore do not have the receptors needed for retinoic acid to bind or function. This means that for retinol in a body or face wash to be effective it must be in contact with the skin long enough to penetrate beneath the stratum corneum to reach living cells—a process that cannot occur during the brief time the Retinol Rinse-Off Cleanser has contact with the skin.

25.    Even prescription tretinoin (synthetic active retinoic acid), which bypasses the complex conversion process of retinyl esters → retinol → retinaldehyde → retinoic acid, comes with specific application guidelines. Users are advised to "avoid washing the skin treated with tretinoin for at least 1 hour after applying it."[9]

26.    Retinol's instability further limits its effectiveness. Exposure to heat, light, and trace metals accelerates its decomposition,[10] and its efficacy can only be preserved under strict conditions:

---

[9]    *See* FDA label for RENOVA® (tretinoin cream 0.05%), https://www.accessdata.fda.gov/drugsatfda_docs/label/2000/19963S5,7LBL.PDF

[10]   SCCS (Scientific Committee on Consumer Safety), revision of the scientific Opinion

BLOOD HURST & O' REARDON, LLP

controlled atmospheric conditions, storage in aluminum tubes, and an environment below 68 degrees Fahrenheit. The Retinol Rinse-Off Cleanser is not shipped or stored on retail stores at the proper temperature and Defendant packages them in plastic containers, not aluminum.

***RoC Falsely Markets the Retinol Rinse-Off Cleanser as Conferring the Skincare Benefits of Retinol***

27.     The Retinol Rinse-Off Cleanser is sold through various third-party retailers, including Target, CVS, Walmart, Walgreens, and Ulta Beauty, among others. RoC also sells Retinol Rinse-Off Cleanser through its website.

28.     As shown in the image below, RoC prominently labels the Retinol Rinse-Off Cleanser with the words "ADVANCED RETINOL," and lists retinol among the ingredients.



29.     "ADVANCED RETINOL" is prominently placed on the front of the Retinol Rinse-Off Cleanser packaging. On the back of the Retinol Rinse-Off Cleanser, RoC claims: "**97% had**

_____

(SCCS/1576/16) on vitamin A (Retinol, Retinyl Acetate, Retinyl Palmitate), preliminary version of 10 December 2021, final version of 24-25 October 2022, SCCS/1639/21, https://health.ec.europa.eu/system/files/2023-08/sccs_o_261.pdf

Case No.

CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

**visibly reduced deep wrinkles.**" (Emphasis original). "Experience Roc's award-winning retinol now in a daily cleanser. Advanced Retinol & Niacinamide leave skin smoother and firmer, while gently removing oil, dirt, and even long-wear makeup trapped on the surface. 97% had visibly reduced fine lines and deep wrinkles. 100% saw instantly smoother, firmer looking skin."

30.    "Retinol" is listed as an ingredient.

31.    The directions for use state: "Gently massage onto damp skin for 30 second AM and/or PM. Rinse well and pat dry."

32.    Consistent with the product packaging, RoC's webpage for the Retinol Rinse-Off Cleanser includes the following claims:

> Experience America's #1 Most Awarded Retinol* now available in a gentle daily
> cleanser. With RoC's Deep Wrinkle Serum Cleanser, 100% of women saw instantly
> more radiant, smoother-looking skin. After just two weeks, 97% of women had an
> improvement in skin firmness and a visible reduction in fine lines & wrinkles, even
> deep ones.
>
> ***
>
> *Based on a 3rd party study using publicly available data sources from publications
> and media sources hosting beauty awards since 2010*[11]*

33.    The webpage also features a paragraph attributed to a dermatologist, which states:

> RoC is famous for its award-winning retinol products, which manage to deliver the
> good effects of retinol (exfoliation, collagen stimulation, and even radiant skin tone)
> while skipping the bad ones (dryness, irritation). That combination is especially true
> in their Retinol Correxion Deep Wrinkle Serum Cleanser. With this product, you get
> the benefits of retinol in the convenience of a cleanser. The addition of Vitamin B,
> Aloe and licorice extracts soothes and moisturizes the skin, leaving it silky smooth![12]

---

[11]    https://www.rocskincare.com/products/retinol-correxion-deep-wrinkle-serum-cleanser?variant=41099882365021&country=US&currency=USD&utm_medium=product_sync&utm_source=google&utm_content=sag_organic&utm_campaign=sag_organic&utm_source=google&utm_medium=cpc&utm_campaign=&utm_content=&utm_term=&&gad_source=1&gclid=Cj0KCQiAy8K8BhCZARIsAKJ8sfSsS3cJ17P7ZjlPHpI9FxDjHoEbxZZ586UWnruYavFbwReltsiJHuwaAo3fEALw_wcB&gclsrc=aw.ds

[12]    *Id.*

BLOOD HURST & O' REARDON, LLP

00222526

34. However, the Retinol Rinse-Off Cleanser cannot provide the skincare benefits associated with retinol. By design and according to the product's directions for use, the Retinol Rinse-Off Cleanser is washed off the skin with water soon after it is applied, preventing any meaningful interaction with the skin.

35. As a result, there is insufficient contact time with the skin for any retinol that may be in the Retinol Rinse-Off Cleanser to penetrate the stratum corneum and undergo the biological conversion process from retinyl esters to retinoic acid. At most, any retinol would only contact the corneocytes, the dead skin cells that lack the RAR and RXR nuclear receptors necessary for retinoic acid to bind and function.

36. Further, to be effective, retinol application must be frequently repeated and left on the skin. The effects of properly applied retinol take weeks—if not months. Even when retinol is properly applied and left on the skin for 24 hours—far longer than the time even topical retinol is typically left on skin—very little retinol permeates the stratum corneum to reach keratinocytes.[13] Rinsing off retinol from the skin simply washes it off, and does not allow it to remain on the skin for a prolonged time period.[14]

37. The price of the Retinol Rinse-Off Cleanser is higher because it is marketed as providing the benefits of retinol. However, because all potentially active retinol (if there is any) in the Retinol Rinse-Off Cleanser is washed away, it does not provide the advertised benefits. Further, because of product container, storage and shipping requirements that are not followed, the Retinol Rinse-Off Cleanser does not provide the advertised benefits.

## CLASS ACTION ALLEGATIONS

38. Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

39. Plaintiffs bring this action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23. The class definition(s) may depend on the

---

[13] *Supra*, n. 10.
[14] *Supra*, n. 10.

BLOOD HURST & O' REARDON, LLP

information obtained through discovery. Notwithstanding, at this time, Plaintiffs bring this action and seeks certification of the following Class:

> All persons within the United States who purchased one or more Retinol Rinse-Off Cleanser from the beginning of the applicable limitations period until the date notice is provided to the Class (the "Nationwide Class" or the "Class").

40.     Alternatively, Plaintiffs bring this action on behalf of themselves and the following classes defined as:

> **Multistate Consumer Protection Class**: All persons who purchased one or more Retinol Cleanser in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Hampshire, New Jersey, New York, Rhode Island, Texas, Washington, and Wisconsin for personal consumption from the beginning of any applicable limitations period through the date of class certification.

> **California Subclass**: All persons who purchased one or more Retinol Cleanser in the State of California from the beginning of any applicable limitations period until the date notice is provided to the Class.

> **Illinois Subclass**: All persons who purchased one or more Retinol Cleanser in the State of Illinois from the beginning of any applicable limitations period until the date notice is provided to the Class.

> **New York Subclass**: All persons who purchased one or more Retinol Cleanser in the State of New York from the beginning of any applicable limitations period until the date notice is provided to the Class.

> **Missouri Subclass**: All persons who purchased one or more Retinol Cleanser in the State of Missouri from the beginning of any applicable limitations period until the date notice is provided to the Class.

Excluded from the Class are the Defendant, its parents, subsidiaries, affiliates, officers, and directors; those who purchased Retinol Rinse-Off Cleansers for the purpose of resale; all persons who make a timely election to be excluded from the Class; the judge to whom this case is assigned and any immediate family members thereof.

41.     The number of Class members is so numerous that the joinder of individual Class members is impracticable. The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors, among other methods.

BLOOD HURST & O' REARDON, LLP

42.    Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

    a.    The advertising message conveyed by the product packaging and reinforced by other marketing and advertising;

    b.    Whether the advertising claim conveyed by the product packaging and reinforced by other marketing and advertising is deceptive;

    c.    Whether the Retinol Rinse-Off Cleanser confers the advertised skincare benefits;

    d.    Whether Plaintiffs and Class members were damaged by RoC's conduct or entitled to restitution and the amount of damages or restitution; and

    e.    Whether Plaintiffs and Class members are entitled to injunctive relief.

43.    The claims of the named Plaintiffs are typical of the claims of the Class because the named Plaintiffs have the same claims and were exposed to the same advertising message about the Retinol Rinse-Off Cleanser, purchased the Retinol Rinse-Off Cleanser, and suffered a loss as a result of that purchase.

44.    Plaintiffs are adequate class representatives because their interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

45.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Individual litigation is not economically feasible given the complex and relatively costly litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties, levels the playing field between litigants, is economically feasible and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court

BLOOD HURST & O' REARDON, LLP

00222526

on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims

and claimants are before this Court for consistent adjudication of the liability issues.

<u>**COUNT I**</u>

**Violation of the State Consumer Protection Acts**
**(On Behalf of the Multistate Consumer Protection Act Class)**

46.     Plaintiffs hereby incorporate by reference and re-allege each and every allegation set

forth as though fully set forth herein.

47.     The Consumer Protection Acts of the States in the Consumer Protection Multistate

Class prohibit false and deceptive advertising of consumer goods.

48.     Plaintiffs and the other members of the Consumer Protection Multistate Class have

standing to pursue a cause of action for violation of the Consumer Protection Acts of the states in

the Consumer Protection Multistate Class because Plaintiffs and members of the Consumer

Protection Multistate Class have suffered an injury in fact and lost money as a result of Defendant's

actions as set forth herein.

49.     Defendant engaged in false and deceptive advertising of the Retinol Rinse-Off

Cleansers.

50.     Defendant intended that Plaintiffs and each of the other members of the Consumer

Protection Multistate Class would rely on the advertising claim at issue and that a reasonable person

would be misled by this deceptive conduct described above.

51.     As a result of Defendant's use or employment of unfair or deceptive acts or business

practices, Plaintiffs and each of the other members of the Consumer Protection Multistate Class

have paid money they should not have paid as a result of Defendant's acts and omissions in an

amount to be proven at trial.

52.     In addition, Defendant's conduct was fraudulent, malicious, and in reckless disregard

of the truth such that an award of punitive damages is appropriate.

///

///

///

BLOOD HURST & O' REARDON, LLP

00222526

1

## COUNT II

2

3

**Deceptive Acts or Practices, New York Gen. Bus. Law § 349**
**(By Plaintiff Pepenella on Behalf of the New York Subclass)**

4       53.    Plaintiff Pepenella incorporates by reference and re-alleges each and every allegation

5    set forth above as though fully set forth herein.

6       54.    Plaintiff Pepenella brings this claim individually and on behalf of members of the

7    New York Subclass against Defendant.

8       55.    By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts

9    and practices by making false representations on the packaging of the Retinol Rinse-Off Cleanser.

10      56.    The foregoing deceptive acts and practices were directed at consumers.

11      57.    The foregoing deceptive acts and practices are misleading in a material way as

12   alleged herein.

13      58.    Plaintiff Pepenella and members of the New York Subclass were injured as a result

14   because (a) they would not have purchased the Retinol Rinse-Off Cleanser if they had known that

15   the Retinol Rinse-Off Cleanser was ineffective at conferring the suggested skincare benefits of

16   topical retinol, or (b) they overpaid for the Retinol Rinse-Off Cleanser on account of the alleged

17   acts and omissions.

18      59.    On behalf of Plaintiff Pepenella and other members of the New York Subclass,

19   Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual

20   damages or fifty dollars for each Retinol Rinse-Off Cleanser purchase, whichever is greater, three

21   times actual damages, punitive damages, reasonable attorneys' fees and costs, and an order

22   enjoining Defendant's deceptive conduct, and any other just and proper relief available under

23   section 349 of the New York General Business Law.

24

## COUNT III

25

26

**False Advertising, New York Gen. Bus. Law § 350**
**(By Plaintiff Pepenella on Behalf of the New York Subclass)**

27      60.    Plaintiff Pepenella incorporates by reference and re-alleges each and every allegation

28   set forth above as though fully set forth herein.

BLOOD HURST & O' REARDON, LLP

00222526

61.     Plaintiff Pepenella brings this claim individually and on behalf of members of the New York Subclass against Defendant.

62.     Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of section 350 of the New York General Business Law by engaging in the acts and omissions alleged.

63.     The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

64.     This misrepresentation has resulted in consumer injury or harm to the public interest.

65.     As a result of this misrepresentation, Plaintiff Pepenella and members of the New York Subclass have suffered economic injury because (a) they would not have purchased the Retinol Rinse-Off Cleanser or paid less had they known that the Retinol Rinse-Off Cleanser was ineffective at conferring the suggested benefits of topical retinol, and (b) they overpaid for the Retinol Rinse-Off Cleanser on account of the misrepresentation that it is effective at conferring the suggested benefits of topical retinol.

66.     On behalf of themselves and other members of the New York Subclass, Plaintiff Pepenella seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars for each Retinol Rinse-Off Cleanser purchase, whichever is greater, three times actual damages, punitive damages, and reasonable attorneys' fees and costs, and an order enjoining Defendant's deceptive conduct, and any other just and proper relief available under section 350 of the New York General Business Law.

## COUNT IV

### Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.
### (By Plaintiffs Barrales and Vales on Behalf of the California Subclass)

67.     Plaintiffs Barrales and Vales incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

68.     The Unfair Competition Law, Cal. Business & Professions Code § 17200, *et seq*. ("UCL"), prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising. In the course of conducting business, Defendant committed unlawful

BLOOD HURST & O' REARDON, LLP

business practices by, among other things, making the representations (which also constitutes advertising within the meaning of section 17200) and omissions of material facts, as set forth more fully herein, and violating Civil Code §§ 1572, 1573, 1709, 1711, 1770(a)(5), (7), (9) and (16); Cal. Business & Professions Code § 17200, *et seq.*, § 17500, *et seq.*; and the common law.

69.     Plaintiffs Barrales and Vales, individually and on behalf of the other California Subclass members, reserve the right to allege other violations of law that constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

70.     In the course of conducting business, Defendant committed "unfair" business practices by, among other things, making the representations (which also constitute advertising within the meaning of section 17200) and omissions of material facts regarding the Retinol Rinse-Off Cleanser as alleged herein. There is no societal benefit from false advertising; only harm. Plaintiffs Barrales and Vales and other California Subclass members would not have purchased or would have paid less for the Retinol Rinse-Off Cleanser than they would have had they known the truth about the Retinol Rinse-Off Cleansers. As a result, Defendant's conduct is "unfair," as it offended an established public policy. Further, Defendant engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

71.     Further, as set forth in this Complaint, Plaintiffs Barrales and Vales allege violations of consumer protection, unfair competition, and truth in advertising laws in California, resulting in harm to consumers. Defendant's acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition, and deceptive conduct towards consumers. This conduct constitutes violations of the unfair prong of Cal. Business & Professions Code § 17200, *et seq*.

72.     There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Cal. Business & Professions Code § 17200, *et seq.*, also prohibit any "fraudulent business act or practice." In the course of conducting business, Defendant committed "fraudulent business act or practices" by, among other things, making the representations (which also constitute advertising within the meaning of section 17200)

BLOOD HURST & O' REARDON, LLP

00222526

and omissions of material facts regarding the Retinol Rinse-Off Cleansers in its advertising campaign, as set forth more fully herein.

73.     Defendant's actions, claims, omissions, and misleading statements, as more fully set forth above, were also false, misleading and/or likely to deceive the consuming public within the meaning of Cal. Bus. & Prof. Code § 17200, *et seq.*

74.     Plaintiffs Barrales and Vales and the other California Subclass members have in fact been deceived as a result of their reliance on Defendant's material representations and omissions, which are described above. This reliance has caused harm to Plaintiffs and the other California Subclass members, each of whom purchased the Retinol Rinse-Off Cleanser. Plaintiffs and the other Class members have suffered injury in fact and lost money as a result of purchasing the products and Defendant's unlawful, unfair, and fraudulent practices.

75.     Defendant knew, or should have known, that its material representations and omissions would be likely to deceive the consuming public and result in consumers purchasing Retinol Rinse-Off Cleanser and, indeed, intended to deceive consumers.

76.     Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

77.     Plaintiffs Barrales and Vales lack an adequate remedy at law. For example, CLRA damages may be calculated under a benefit-of-the-bargain methodology while UCL restitution may be calculated under a price premium or full refund theory, which could yield different results.

78.     Plaintiffs Barrales and Vales, on behalf of themselves, all others similarly situated, and the general public, seek restitution from Defendant of all money obtained from Plaintiffs and the other members of the California Subclass collected as a result of unfair competition, an injunction prohibiting Defendant from continuing such practices, corrective advertising, and all other relief this Court deems appropriate, consistent with Business & Professions Code § 17203.

///

///

///

///

00222526

BLOOD HURST & O' REARDON, LLP

## COUNT V

### The California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.
### (By Plaintiffs Barrales and Vales On Behalf of the California Subclass)

79.     Plaintiffs Barrales and Vales incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

80.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq*. ("CLRA"). Plaintiffs Barrales and Vales are consumers as defined by California Civil Code section 1761(d). The Retinol Rinse-Off Cleansers are "goods" within the meaning of the CLRA.

81.     Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code section 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of the Retinol Rinse-Off Cleansers:

(5)     Representing that [the Retinol Rinse-Off Cleaner has] . . . approval, characteristics, . . . uses [and] benefits . . . which [they do] not have . . . .

*          *          *

(7)     Representing that [the Retinol Rinse-Off Cleaner is] of a particular standard, quality or grade . . . if [it is] of another.

*          *          *

(9)     Advertising goods . . . with intent not to sell them as advertised.

*          *          *

(16)     Representing that [the Retinol Rinse-Off Cleaner] has been supplied in accordance with a previous representation when [it has] not.

82.     Defendant violated the CLRA by representing and failing to disclose material facts on its Retinol Rinse-Off Cleanser's labeling and associated advertising, as described above, when it knew, or should have known, that the representations were false and misleading and that the omissions were of material facts they were obligated to disclose.

83.     Pursuant to California Civil Code section 1782(d), Plaintiffs Barrales and Vales, individually and on behalf of the other members of the California Subclass, seek a court order

BLOOD HURST & O' REARDON, LLP

00222526

1 enjoining the above-described wrongful acts and practices of Defendant and for restitution and

2 disgorgement and all other relief this Court deems proper.

3          84.     Pursuant to California Civil Code section 1782(a), Defendant was notified in writing

4 by certified mail of the particular violations of section 1770 of the CLRA, which notification

5 demanded that Defendant rectify the problems associated with the actions detailed above and give

6 notice to all affected consumers of Defendants' intent to so act. A copy of the letter is attached

7 hereto as **Exhibit A**.

8          85.     If Defendant fails to rectify or agree to rectify the problems associated with the action

9 above and give notice to all affected consumers within 30 days of the date of written notice pursuant

10 to section 1782 of the CLRA, Plaintiffs will amend this complaint to add claims for actual, punitive

11 and statutory damages.

12          86.     Pursuant to section 1780(d) of the CLRA, attached hereto as **Exhibit B** is the

13 affidavit showing that this action has been commenced in the proper forum.

14                                   <u>**COUNT VI**</u>

15          **Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
            **815 ILCS 505/2**
16
            **(By Plaintiff Doerr On Behalf of the Illinois Subclass)**
17

18          87.     Plaintiff Doerr hereby incorporates by reference and re-alleges each and every

19 allegation set forth as though fully set forth herein.

20          88.     The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp.

21 Stat. 505/2 ("ICFA"), prohibits unfair methods of competition and unfair or deceptive acts or

22 practices, including, but not limited to, the use or employment of any deception, fraud, false

23 pretense, false promise, or misrepresentation in the conduct of any trade or commerce.

24          89.     Plaintiff Doerr and members of the Illinois Subclass are consumers who purchased

25 the Retinol Rinse-Off Cleansers.

26          90.     Defendant's deceptive conduct occurred in the course of engaging in trade or

27 commerce.

28

BLOOD HURST & O' REARDON, LLP

00222526

                                        19                                        Case No.
                              CLASS ACTION COMPLAINT

91.    Defendant's conduct, described above, in misrepresenting and omitting material facts regarding the Retinol Rinse-Off Cleanser constitutes an unfair or deceptive practice and was and is likely to mislead reasonable consumers, as detailed above.

92.    A reasonable consumer would consider the promise of receiving something other than as promised to be important when making a decision to purchase the Retinol Rinse-Off Cleanser.

93.    Defendant's practices were unfair because they offended public policy, were immoral, unethical, oppressive, and unscrupulous, and caused substantial injury to consumers.

94.    Defendant's unfair and deceptive acts or practices were the foreseeable and actual cause of Plaintiff Doerr and other members of the Illinois Subclass suffering actual damages on account of receiving a product that was not as advertised.

95.    Plaintiff Doerr and the other Illinois Subclass members paid for a product in accordance with Defendant's representations. When they received a product that was not in conformity with those representations and their reasonable expectations, Plaintiff Doerr and the other Illinois Subclass members were damaged on account of purchasing and receiving the Retinol Rinse-Off Cleanser that was other than as advertised.

96.    Plaintiff Doerr and the other Illinois Subclass members make claims for damages, punitive damages, attorneys' fees and costs pursuant to 815 ILCS 505/10a. Additionally, Plaintiff Doerr and the other Illinois Subclass members seek an order enjoining Defendant from continuing its false and deceptive conduct.

### COUNT VII

**Violation of the Missouri Merchandising Practices Act**
**Mo. Rev. Stat. § 407.010, *et seq*.**

**(On Behalf of Plaintiff Caudle and the Missouri Subclass)**

97.    Plaintiff Caudle hereby incorporate by reference and re-allege each and every allegation set forth as though fully set forth herein.

98.    Plaintiff Caudle, the Missouri Subclass members, and Defendant are all "person[s]" for purposes of the Missouri Merchandising Practices Act. Mo. Rev. Stat. § 407.010, *et seq*.

("MMPA"). The Retinol Rinse-Off Cleanser is "merchandise" for purposes of the MMPA. *Id*.

99.    Defendant's sale of Retinol Rinse-Off Cleanser is a "sale" within the meaning of the MMPA. *Id*.

100.    Defendant engaged in "trade" or "commerce" within the meaning of the MMPA. *Id*.

101.    Under the MMPA, Defendant has a statutory duty to refrain from both deceptive acts and practices.

102.    Pursuant to the MMPA, an unlawful practice is the use of "any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce...in or from the state of Missouri." Mo. Rev. Stat. § 407.020.

103.    Defendant used and employed deception, fraud, false pretense, false promise, misrepresentation, unfair practice and the concealment, suppression, or omission of material facts in connection with the sale or advertisement of the Retinol Rinse-Off Cleanser in trade or commerce in the State of Missouri, in violation of the MMPA.

104.    In selling the Retinol Rinse-Off Cleanser to Plaintiff Caudle and the members of the Missouri Subclass, Defendant has misrepresented, and continue to misrepresent, material facts, either expressly or by implication by representing that the Retinol Rinse-Off Cleanser confers the suggested benefits of topical OTC retinol. Plaintiff Caudle has standing to pursue this claim as she has suffered actual economic damages as a proximate result of Defendant's actions as set forth herein.

105.    Such representations were materially misleading and deceptive, and were a producing cause of economic damages to consumers.

106.    Plaintiff Caudle and the members of the Missouri Subclass purchased the Retinol Rinse-Off Cleanser for their own use, and, as a direct and proximate result of Defendant's unconscionable, unlawful and deceptive practices, have suffered and continue to suffer ascertainable loss by paying for the Retinol Rinse-Off Cleanser.

107.    As a direct and proximate result of Defendant's violations of the MMPA, Plaintiff Caudle and the members of the Missouri Subclass have sustained economic losses and other

BLOOD HURST & O' REARDON, LLP

00222526

1    damages for which they are entitled to statutory relief, compensatory damages, and declaratory relief

2    according to proof.

3        108.    Defendant violated and continue to violate the MMPA by representing that the

4    Retinol Rinse-Off Cleanser confers the suggested benefits of retinol in transactions with Plaintiff

5    Caudle and members of the Missouri Subclass, which were intended to result in, and did result in,

6    the sale of the Retinol Rinse-Off Cleanser.

7        109.    Defendant's actions as described herein were done knowingly with conscious

8    disregard of the right of Plaintiff Caudle and the members of the Missouri Subclass, and Defendant

9    was wanton and malicious in its concealment of the same.

10       110.    Defendant's false, deceptive, and misleading business practices constituted, and

11   constitute, a continuing course of conduct in violation of the MMPA because Defendant continues

12   to sell the Retinol Rinse-Off Cleanser and represents that the Retinol Rinse-Off Cleanser has

13   characteristics, uses and benefits which the products do not have, and has thus caused economic

14   damage and continues to cause economic damage to Plaintiff Caudle and the members of the

15   Missouri Subclass.

16       111.    Neither Plaintiff Caudle, nor the members of the Missouri Subclass, nor any

17   reasonable consumer would have purchased the Retinol Cleanser if they were informed that it would

18   not confer the suggested benefits of topical OTC retinol.

19       112.    Plaintiff Caudle and the members of the Missouri Subclass have been damaged by

20   overpaying for the Retinol Rinse-Off Cleansers.

21       113.    By reason of the foregoing, Plaintiff Caudle and the members of the Missouri

22   Subclass are entitled to injunctive relief pursuant to the MMPA, enjoining Defendants from (1)

23   selling the Retinol Rinse-Off Cleanser; (2) expressly or impliedly representing to current and

24   potential purchasers of the Retinol Rinse-Off Cleanser that it can confer the suggested benefits of

25   topical OTC retinol.

26       114.    By reason of the foregoing, Plaintiff Caudle and the members of the Missouri

27   Subclass are also entitled to injunctive relief in the form of corrective advertising requiring

28

00222526

BLOOD HURST & O' REARDON, LLP

Defendant to disseminate truthful, adequate disclosures about the actual uses of the Retinol Rinse-Off Cleanser.

115.    Plaintiff Caudle and the members of the Missouri Subclass shall be irreparably harmed if such an order is not granted.

### COUNT VIII

### Unjust Enrichment

### (On Behalf of the Nationwide Class)

116.    Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

117.    Plaintiffs bring this claim individually and on behalf of members the Nationwide Class.

118.    Plaintiffs and Class members conferred benefits on Defendant by purchasing the Retinol Rinse-Off Cleansers.

119.    Defendant has knowledge of such benefits.

120.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class members' purchases of the Retinol Rinse-Off Cleanser. Retention of that money under these circumstances is unjust and inequitable because Defendant misrepresented that the Retinol Rinse-Off Cleanser the suggested benefits of OTC topical retinol products.

121.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the Class members for their unjust enrichment, as ordered by the Court.

### RELIEF DEMANDED

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant as follows:

A.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as representatives of the Class and appointing Plaintiffs' attorneys as Class Counsel to represent the Class;

B.    For an order declaring that Defendant's conduct violates the statutes referenced

herein;

   C.    For an order finding in favor of Plaintiffs and the Classes on all causes of action asserted herein;

   D.    For compensatory, statutory, treble, and punitive damages in amounts to be determined by the Court and/or jury;

   E.    For an order of restitution and all other applicable forms of equitable monetary relief;

   F.    For an order enjoining Defendant from engaging in the unlawful conduct described herein;

   G.    For prejudgment interest on all amounts awarded; and

   H.    For an order awarding Plaintiffs and the members of the Class their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

   Plaintiffs demand a trial by jury on all claims so triable.

Respectfully submitted,

Dated: February 19, 2025

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
JAMES M. DAVIS (301636)

By:        *s/ Timothy G. Blood*
           TIMOTHY G. BLOOD

501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
jdavis@bholaw.com

*Attorneys for Plaintiffs*

BLOOD HURST & O' REARDON, LLP

00222526